Karen King Mitchell, Presiding Judge
This case arises from the second entry of a judgment for sanctions against attorneys Patrick Michael Davis, Mandee Rowen Pingel, and their firm, Davis | Pingel & Associates (collectively "Attorneys") in a child custody modification case where Attorneys represented the mother. Attorneys raise four points on appeal: (1) the trial court erred in entering a judgment for sanctions of $75,000 because Attorneys did not act in bad faith and were not afforded the procedural protections provided by Rule 55.03; (2) the trial court erred in granting Father's motion for sanctions and entering a judgment for $25,000 in favor of Father because Attorneys did not engage in sanctionable conduct, Father failed to comply with the procedural protections required by law, and there was no evidence that Father incurred any additional attorney's fees as a result of Attorneys' conduct; (3) the trial court erred in entering a sanctions judgment for a total of $100,000 because the penalty was punitive in nature and the trial court failed to provide Attorneys with the procedural protections required by Rule 36.01 for a finding of criminal contempt; and (4) the trial court erred in granting Father's motion for sanctions in violation of both the Missouri and United States Constitutions, Rule 55.03, and Judicial Canons 2A and 3B because the trial court relied on improper evidence, and Attorneys were deprived of both notice and a hearing at the time the evidence was received. Finding no error, we affirm.
Background[1]
This case is before us for the second time. In Francis v. Wieland , 512 S.W.3d 71, 74-75 (Mo. App. W.D. 2017) ("
*344 Francis v. Wieland " -the first appeal), Mother appealed the underlying modification judgment, and Attorneys appealed the entry of a $75,000 sanctions judgment against them. We affirmed the modification judgment, but we reversed and remanded the sanctions judgment solely "[b]ecause the circuit court indicated before trial began that a hearing would be held to consider Father's sanctions motion, but [the court] did not conduct that hearing"; thus, "as a matter of fundamental fairness," we reversed the sanctions judgment and remanded for "a limited hearing."[2] Id. at 86.
In the original judgment, the trial court granted Father's motion for sanctions, which was based primarily on Attorneys' contacts with Father's expert Dr. Lori Schwartz, the psychologist who had conducted Mother's independent psychiatric evaluation. Id. at 75-76. "One element of that contact was a 44[-]page letter from [Attorneys] to Dr. Schwartz, suggesting that the expert amend her evaluation due to 125 alleged ambiguities and factual inaccuracies." Id. at 76. The letter accused Dr. Schwartz of being "incorrect" and "unfair," and it repeatedly emphasized Attorneys' connection with Dr. Schwartz's colleagues "in an apparent attempt to pressure Dr. Schwartz to change her report and therefore, her testimony." The letter specifically identified Dr. Gerald Gentry, a colleague of Dr. Schwartz, "while giving information as to how Dr. Schwartz's interview and testing process was not like that of the other experts."[3]
The court's original sanctions judgment also criticized Attorneys' contact with Dr. Aileen Utley, another psychologist and expert witness for Father who "had conducted the child's independent psychiatric evaluation." Id. The original sanctions judgment further identified "additional litigation actions purportedly undertaken in 'bad faith,' " such as the submission of a 260-page request for findings of fact and conclusions of law, containing 2,265 proposed findings, many of which were based on evidence not introduced at trial, included either incomplete sentences or irrelevant information, or were simply left blank. Id. The original sanctions judgment also noted further "abusive" and "bad faith" conduct, such as (1) falsely representing to the court that "multiple ethical complaints had been filed against Dr. Utley"; (2) attempting to serve 34 pages of interrogatories and a request for production of 74 items on the guardian ad litem and then suggesting that, "if the Guardian would not be required to answer the questions, that the minor child, who was 9 years of age at the time, should be compelled to"; (3) directly violating a court order that depositions not be scheduled for Saturdays without prior agreement from all parties by independently scheduling the deposition of Mother's expert for a Saturday without prior notice or agreement and then refusing to reschedule; and (4) engaging in an unreasonably lengthy deposition of Father (two full days, with ten hours of questioning), causing Father to file a Motion to Terminate the deposition.
After identifying the sanctionable conduct, the trial court listed the following legal bases for granting sanctions: (1)
*345 Rule 56.01(b)(4), governing discovery and contact with expert witnesses; (2) Rule 4-3.4 of the Missouri Rules of Professional Conduct, precluding lawyers from "unlawfully obstruct[ing] another party's access to evidence[;] ... falsify[ing] evidence, counsel[ing] or assist[ing] a witness to testify falsely, or offer[ing] an inducement to a witness that is prohibited by law[; and] request[ing] a person other than a client to refrain from voluntarily giving relevant information to another party"; (3) § 575.270.1, defining the criminal offense of witness tampering; and (4) the inherent power of the court to sanction a party that has acted in bad faith. The court then entered judgment, finding that Attorneys had "violated the Rules of Professional Conduct, Rule 4-3.4, regarding contact with opposing parties' expert witnesses and Rule 56.01 of the Missouri Rules of Civil Procedure"; that their "behavior ... in the above cause[ ] ha[d] been in bad faith, ... abusive to the Court, opposing counsel and their own client, as well as a threat to the legal process, the legal profession, and the community at large." The court ordered sanctions in the amount of $75,000, payable to Father. Following entry of the sanctions judgment, Attorneys "filed a motion for reconsideration of the sanctions judgment, including a request that the court disqualify itself for bias." Francis , 512 S.W.3d at 76. The motion for reconsideration was 415 pages long and "specified that [Attorneys] were precluded at trial from presenting the testimony of Dr. Gentry relating to their letter to Dr. Schwartz." Id. at 86. After the motion was denied, Attorneys appealed.
In Francis v. Wieland , among other things, Mother challenged the court's denial of Attorneys' request that the court disqualify itself for bias,[4] and Attorneys raised three challenges to the court's sanctions judgment. Id. at 81-86. More specifically, Attorneys argued that (1) the trial court erred in granting Father's motion for sanctions in violation of both the Missouri and United States Constitutions, Rule 55.03, and Judicial Canons 2A and 3B because the trial court relied on improper evidence, and Attorneys were deprived of both notice and a hearing at the time the evidence was received; (2) the trial court erred in granting sanctions pursuant to its inherent authority because there was no evidence of bad faith; and (3) the trial court erred in entering a sanctions judgment because the penalty was punitive in nature and the trial court failed to provide Attorneys with the procedural protections required by Rule 36.01 for a finding of criminal contempt.
We rejected Mother's challenge to the court's refusal to disqualify itself for bias because none "of the cited instances of purportedly prejudicial conduct r[o]se to a level requiring recusal." Id. at 83. We declined to reach any of "the specific legal and factual issues raised in [Attorneys'] points," but noted that the trial court initially indicated, in response to the sanctions motion, that it would grant a hearing if requested:
I'm a little concerned about the allegations made in the motion for sanctions.... So I'm not going to deny it and I'm not going to grant it at this point in time. But at some point in time *346 if somebody wants to bring this up again, we will have a hearing after I receive all of the evidence in this case, and if sanctions need to be imposed, they'll be imposed.
Id. at 75 n.2, 86 n.17. Accordingly, we reversed the sanctions judgment "solely as to the lack of a hearing on the sanctions motion." Id. at 86. In doing so, we issued specific directions on remand regarding the nature and scope of the hearing to be held:
On remand, the circuit court is ordered to provide proper notice of a hearing to Ms. Pingel, Mr. Davis, and their law firm on the motion for sanctions and alleged bad-faith conduct and to conduct a limited hearing. Because the motion for reconsideration of the court's oral pronouncement of the sanction judgment specified that counsel were precluded at trial from presenting the testimony of Dr. Gentry relating to their letter to Dr. Schwartz, they may present this witness and testimony to the extent it differs from or adds anything to the Gentry affidavit filed with their motion to intervene. If the parties and circuit court agree that additional witnesses, evidence or argument would clarify the issues, such evidence may be introduced and such argument may be heard. The court may, on remand, consider all of the proceedings to date and the filings, motions, actions by counsel in open court, and evidence adduced in this proceeding to date, and prior proceedings in reaching its decision regarding sanctions.
Id.
After our opinion in Francis v. Wieland was issued, Father's counsel served a notice on Attorneys of her intent to call the matter up for a hearing. All parties appeared on May 1, 2017, at which time the court set the hearing for July 21, 2017. Over the objection of Father's counsel and the GAL, the trial court advised Attorneys that it would allow them to present whatever evidence they wished, but they would be limited to a total of two hours in which to do so. Though Attorneys protested, claiming they needed two days to present evidence, they, in fact, concluded their case in just over one hour. Attorneys presented testimony from Dr. Gentry, Attorney Davis, Attorney Pingel, and former Missouri Supreme Court Judge Edward "Chip" Robertson.
Attorney Davis testified that the 260-page request for findings of fact and conclusions of law was actually a draft document that had been signed and submitted in error. Attorney Davis acknowledged intentionally scheduling a deposition for a Saturday in direct violation of the court's order, but claimed that Saturday was the only day his witness was available. Attorney Davis further testified that the deposition of Father took so long because Father was a recalcitrant witness and offered many evasive responses.
Attorney Pingel testified that she believed they were operating within the bounds of the law in communicating with Dr. Schwartz and that they were extending professional courtesy in giving her the opportunity to correct perceived factual inaccuracies in her report. Dr. Gentry testified that he believed a letter to Dr. Schwartz, pointing out any factual errors, was professionally appropriate. Attorney Pingel further testified that their contact with Dr. Schwartz was permissible under the Missouri Supreme Court's decision in Brown v. Hamid , 856 S.W.2d 51 (Mo. banc 1993). Robertson testified that he participated in the Brown decision while serving on the Missouri Supreme Court, and he understood the case to hold that, "once the expert has been identified and a report has been given or even in this case as a deposition has been given it's perfectly within the *347 rules to have an ex parte conversation provided it is merely to correct and that sort of thing." Robertson further testified that, before a court may sanction counsel under its inherent authority, there must be evidence that counsel acted in bad faith, and he did not see anything he would find amounting to bad faith in the case. Robertson also testified that, when sanctions are ordered, the money usually does not go to the opposing party but instead goes into the court registry or to a charity of the judge's choice. He further indicated that, if monetary sanctions were ordered payable to the opposing party or opposing counsel, there typically needed to be evidence that the opposing party was forced to expend money unnecessarily as a result of the sanctionable conduct.
Following the hearing, the trial court entered a new Judgment for Sanctions. In the new judgment, the court found that, despite Attorney Davis's testimony, the request for findings of fact and conclusions of law was intentionally filed, knowing that they would require opposing counsel and the court to take steps, involving time and cost, to address it. With respect to the Saturday deposition, the court noted that Attorney Davis failed to seek consent or leave of the court before scheduling the deposition, in an intentional violation of the court's order. As to the letter to Dr. Schwartz, the court rejected Attorney Pingel's characterization of it as a mere offer to correct factual inaccuracies and found, instead, that it was "more akin to witness tampering," which would not be permissible under Brown .[5] The court concluded that, "upon the opportunity provided pursuant to the Mandate of the Court of Appeals, no reasonable explanation has been provided for the behavior mentioned herein or in this Court's previous Judgment for Sanctions."
The court then addressed the amount and nature of the sanctions to be imposed. In doing so, the court first discussed the amount of fees Attorneys had charged in order to determine what an appropriate amount for sanctions would be. The court noted that Attorneys had received more than $400,000 in fees, which the court found "is not normal or reasonable for a ... custody modification case, no matter what the issues may be or how complex they may be." The court determined that "[t]he mere charging of such a fee in a case of this nature shocks the conscience of the Court and holds the legal profession out for public ridicule and unnecessary criticism." Then, relying on Robertson's testimony, the court modified its previous sanctions judgment so that the $75,000 award would be divided up amongst various charities rather than given to Father, but the court also determined that sanctions in the form of attorney's fees were warranted to compensate Father for fees he incurred in responding to Attorneys' abusive pleadings, and it determined that $25,000 was an adequate amount. Attorneys appeal.
Standard of Review[6]
"A trial court's imposition of sanctions is reviewed for abuse of discretion."
*348 A.J.H. ex rel. M.J.H. v. M.A.H.S. , 364 S.W.3d 680, 681 (Mo. App. E.D. 2012). "An abuse of discretion occurs when the court's order is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. at 682 (quoting Camden v. Matthews , 306 S.W.3d 680, 683 (Mo. App. S.D. 2010) ). "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that [it] abused its discretion." Hale v. Cottrell, Inc. , 456 S.W.3d 481, 488 (Mo. App. W.D. 2014) (quoting Anglim v. Mo. Pac. R.R. Co. , 832 S.W.2d 298, 303 (Mo. banc 1992) ).
Analysis
Attorneys raise four claims on appeal. They argue that the trial court erred in: (1) entering sanctions of $75,000 under its inherent power because there was neither a showing of bad faith nor compliance with the procedural protections provided in Rule 55.03; (2) granting Father's motion for sanctions and awarding him $25,000 compensation because there was no evidence that Father incurred any additional attorney's fees as a direct result of Attorneys' conduct and Father failed to comply with the procedural protections required by law; (3) entering a judgment for sanctions in the total amount of $100,000 because the judgment was punitive in nature and failed to comply with the procedural protections of Rule 36.01 pertaining to criminal contempt; and (4) granting Father's motion for sanctions in violation of both the Missouri and United States Constitutions, Rule 55.03, and Missouri Judicial Canons 2A and 3B, insofar as the court relied upon allegedly improper evidence.
A. The trial court exceeded the scope of the mandate in Francis v. Wieland .
Many of Attorneys' arguments are based upon matters that arose during the hearing on remand, which exceeded the scope of our mandate in Francis v. Wieland . And, because the court's actions were done at Attorneys' request, any error resulting therefrom was invited by Attorneys and may not be the subject of complaint in this appeal.
"On remand, the scope of the trial court's authority is defined by the appellate court's mandate." Guidry v. Charter Commc'ns, Inc. , 308 S.W.3d 765, 768 (Mo. App. E.D. 2010). "Following remand, the trial court is required to render judgment in conformity with the appellate court's mandate and accompanying opinion." Id.
"There are two types of remands: (1) a general remand, which does not provide specific direction and leaves all issues open to consideration in the new trial; and (2) a remand with directions, which requires the trial court to enter a judgment in conformity with the mandate." Id. "[W]here an appellate court remands with specific directions , the trial court is duty-bound to render a judgment that strictly conforms to that mandate. The court is without power to modify, alter, amend, or otherwise depart from those directions." Id. at 769 (quoting Pope v. Ray , 298 S.W.3d 53, 57 (Mo. App. W.D. 2009) (emphasis in the original)).
Here, our mandate in Francis v. Wieland was a specific one with express instructions governing the hearing to be conducted. We ordered the circuit court, on remand, to: (1) "provide proper notice of a hearing" to Attorneys "on the motion for sanctions and alleged bad-faith conduct"; (2) "conduct a limited hearing"; (3) allow *349 Attorneys to present Dr. Gentry and "testimony to the extent it differs from or adds anything to the Gentry affidavit filed with [Attorneys'] motion to intervene"; and (4) allow Attorneys to present "additional witnesses, evidence or argument" only "[i]f the parties and circuit court agree that" such evidence "would clarify the issues." Francis , 512 S.W.3d at 86 (emphasis added). Additionally, we provided the trial court with authority to "consider all of the proceedings to date and the filings, motions, actions by counsel in open court, and evidence adduced in this proceeding to date, and prior proceedings in reaching its decision regarding sanctions." Id.
After providing the required notice, the trial court conducted a limited hearing, but failed to follow the directions of the mandate with respect to the evidence to be presented at the hearing. At Attorneys' request, the trial court allowed-over Father's and the GAL's objection-evidence from witnesses beyond Dr. Gentry. Additionally, the trial court placed no limits on the scope of Dr. Gentry's testimony, and the majority of his testimony was merely repetition of what appeared in his affidavit.
"The general rule of law is that a party may not invite error and then complain on appeal that the error invited was in fact made." Pierson v. Kirkpatrick , 357 S.W.3d 293, 299 (Mo. App. S.D. 2012) (quoting Lau v. Pugh , 299 S.W.3d 740, 757 (Mo. App. S.D. 2009) ). "It is axiomatic that a party cannot lead a trial court into error and then lodge a complaint about the action." Id. (quoting In re Berg , 342 S.W.3d 374, 384 (Mo. App. S.D. 2011) (internal quotations omitted)).
Thus, to the extent any of Attorneys' claims of error are premised on matters occurring below that were beyond the scope of our mandate in Francis v. Wieland , those claims will not be addressed. See State v. Doss , 503 S.W.3d 290, 292-93 (Mo. App. W.D. 2016) (refusing to grant relief, following remand, based upon claims of error that were beyond the scope of the mandate in the first appeal).
B. The trial court did not abuse its discretion in entering sanctions under its inherent authority .
In their first point on appeal, Attorneys argue that the court erred in entering the sanctions under its inherent authority for two reasons: (1) there was no evidence of bad faith; and (2) the court failed to comply with the procedural requirements of Rule 55.03. Because "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct," Chambers v. NASCO, Inc. , 501 U.S. 32, 49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), and the court's judgment below relied on both its inherent authority and an alleged violation of Rule 55.03, we need not address the second prong of Attorneys' claim. Instead, we address only the question of whether there was evidence supporting the court's determination that Attorneys acted in bad faith.
"The purpose of allowing courts to impose sanctions based on their inherent authority is two[-]fold: one, to allow the court to vindicate judicial authority without resort to the more drastic sanctions like contempt of court; [two], to make a prevailing party whole for expenses caused by his opponent's obstinacy." A.J.H. , 364 S.W.3d at 682 (citing Chambers , 501 U.S. at 46, 111 S.Ct. 2123 ). "A trial court may use its inherent powers and impose sanctions [only] when parties act in bad faith." Hale , 456 S.W.3d at 488. "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." Chambers , 501 U.S. at 50, 111 S.Ct. 2123.
*350 "While there is no concrete definition of 'bad faith,' it embraces something more than bad judgment or negligence." A.J.H. , 364 S.W.3d at 683. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." Id. (quoting State ex rel. Twiehaus v. Adolf , 706 S.W.2d 443, 447 (Mo. banc 1986) ).
Here, the trial court found the following actions to have been undertaken by Attorneys in bad faith: (1) filing abusive pleadings, such as the 260-page request for 2,265 findings of fact and conclusions of law; (2) engaging in improper contact with Father's expert, Dr. Schwartz, by sending her a 44-page letter, identifying 125 alleged errors in her report, and suggesting that she change her statements; (3) making false representations to the court regarding the existence of ethical complaints against Father's expert, Dr. Utley; (4) threatening to compel the minor child to respond to discovery when the GAL sought to quash Attorneys' 34-page set of interrogatories and 74 requests for production; (5) directly violating the court's order to not schedule depositions for Saturdays without prior approval and consent of the court and opposing parties; and (6) engaging in an excessively long deposition of Father.[7]
Attorneys raise several arguments for why the court's determination of bad faith was erroneous, but none is persuasive. Regarding the findings of fact and conclusions of law, Attorneys argue that their conduct in filing the request amounted to-at most-negligence, relying on Attorney Davis's testimony at the remand hearing that he inadvertently signed and filed a draft instead of a final document. Because Attorney Davis's testimony was beyond the scope of our mandate in Francis v. Wieland , we will not consider this argument other than to note that, "[i]n reaching its judgment, the trial court is free to believe any, all, or none of the evidence presented at trial," and we "defer to the trial court's credibility determinations." Hunter v. Moore , 486 S.W.3d 919, 925 (Mo. banc 2016).
With respect to Attorneys' contact with Dr. Schwartz, they argue the contact was permissible under the holding in Brown v. Hamid , 856 S.W.2d 51, 55 (1993), and rely on Robertson's testimony at the hearing in support. Because Robertson's testimony was beyond the scope of our mandate in Francis v. Wieland , we do not consider it. As to their argument that Brown necessarily renders their conduct permissible, we already held to the contrary in Francis v. Wieland : "We are not persuaded that Brown must be read as rendering counsel's conduct permissible." Francis , 512 S.W.3d at 85 n.16.
In Brown , the Court held that, "[i]n both formal and informal discovery, the Rules do not prohibit a party from trying to convince an expert that an opinion is erroneous, and should be reconsidered in light of particular facts or in light of the opinions of other experts." Brown , 856 S.W.2d at 54. The Court qualified its holding, however, by noting that,
*351 when a party or an attorney emphasizes his or her connections with an expert's colleagues or superiors-especially when unrelated to the case-it may constitute a form of pressure on an expert's decision to testify, and implies the possibility of indirect benefits or punishments from that decision. In some circumstances, such pressure may constitute a violation of an attorney's ethical duties or the criminal law.
Id. (citing § 575.270.1-witness tampering and Rule 4-3.4 of the Rules of Professional Conduct). Here, as the trial court found, Attorneys' letter to Dr. Schwartz accused her of being "incorrect" and "unfair" and repeatedly emphasized Attorneys' connection with Dr. Schwartz's colleagues "in an apparent attempt to pressure Dr. Schwartz to change her report and therefore, her testimony." The letter specifically identified Dr. Gentry when "giving information as to how Dr. Schwartz's interview and testing process was not like that of the other experts." The trial court concluded that the letter itself went beyond mere requests for corrections and instead was "more akin to witness tampering." We agree and see no abuse of discretion in the trial court's determination.
Regarding the discovery propounded on the GAL, Attorneys merely argue that it was conducted in good faith; they do not address the court's concern about their threat to compel the minor child to respond if the GAL failed to do so. As to the violation of the court's order with respect to Saturday depositions, Attorneys' argument is two-fold: (1) the court's order was oral and not written;[8] and (2) there was no evidence that any of the opposing parties incurred additional expenses.[9] These arguments fail to address the trial court's concern that Attorneys acted directly in contravention of the court's order, despite the fact that they could have easily sought permission from the court or consent of the opposing parties in light of their expert's apparent limited availability. Attorneys also do not address the court's concerns about their misrepresentation regarding ethical complaints against Dr. Utley or the excessively lengthy deposition of Father. While several of Attorneys' actions, standing alone, could support a finding of bad faith, when considered as a whole, there is simply no basis for us to hold that the trial court abused its discretion in finding bad faith warranting sanctions.
Though we are not addressing any procedural requirements of Rule 55.03, Chambers requires that a court "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." Chambers , 501 U.S. at 50, 111 S.Ct. 2123.
In Francis v. Wieland , Attorneys complained that they had not received notice of their sanctionable conduct and were deprived of the hearing promised by the court. Despite noting "that a sanctions hearing is not required in every case," Francis , 512 S.W.3d at 86 n.17, we agreed *352 that fundamental fairness required Attorneys receive the promised hearing, reversed the first sanctions judgment, and remanded for a limited hearing. When the hearing was held on remand, Attorneys were fully aware of the conduct the trial court found to have been conducted in bad faith, and they fully participated in the hearing, even beyond the scope of that allowed in our mandate. But the court nevertheless found that "no reasonable explanation has been provided for the behavior mentioned" in either sanctions judgment. As such, Attorneys have received all the process they are due.
Point I is denied.
C. Attorneys may not complain about the $25,000 sanctions judgment, as it is the result of invited error.
In their second point on appeal, Attorneys argue various reasons that the trial court erred in entering a sanctions judgment awarding $25,000 to Father in the form of attorney's fees. But the court's judgment modifying the prior sanctions judgment in this manner was expressly based on "the legal analysis provided by [Attorneys'] own expert witness[, Robertson]" at the remand hearing. Because Robertson's testimony, upon which this claim of error is based, exceeded the scope of our mandate in Francis v. Wieland and was presented at Attorneys' request, we will not consider this point.
Point II is denied.
D. The sanctions judgment was not a criminal contempt judgment.
In their third point on appeal, Attorneys argue that the $100,000 sanctions judgment was punitive in nature and, thus, had to comply with the procedural protections afforded by Rule 36.01 pertaining to criminal contempt.[10] We disagree.
To begin, nothing in either the 2016 or 2017 sanctions judgments reflects a purpose to punish. Rather, both judgments expressly state that the purpose of ordering the monetary sanctions is "to encourage and 'provide incentive' [to Attorneys] to behave appropriately" and "discourage [Attorneys] from further behavior which is in bad faith," and "deter this type of conduct."
Furthermore, even though "[t]he power of criminal contempt [also] springs ... from the inherent power of the courts to protect the judicial system," Teefey v. Teefey , 533 S.W.2d 563, 566 (Mo. banc 1976), that does not mean that every sanctions judgment issued under a court's inherent authority is, by default, a matter of criminal contempt. As noted in Chambers , one of the purposes of sanctions under a court's inherent authority is "to allow the court to vindicate judicial authority without resort to the more drastic sanctions like contempt of court. " A.J.H. , 364 S.W.3d at 682 (citing Chambers , 501 U.S. at 46, 111 S.Ct. 2123 ) (emphasis added). Simply because a sanctions judgment has the appearance of a penalty does not transform it into a judgment of criminal contempt under Rule 36.01. See In re Smothers , 322 F.3d 438, 442 (6th Cir. 2003) (noting that "there are penalties, other than criminal contempt, that [may] more appropriately fit that conduct," and then citing a court's inherent authority as discussed in Chambers before noting, "when *353 confronted with actions that may not fall within the court's contempt power, this inherent power to maintain respect and decorum grants courts the flexibility to equitably tailor punishments that appropriately fit the conduct.").[11]
Furthermore, "[b]efore a person can be punished for contempt, it must appear that there has been an adjudication and conviction or a judgment holding the party guilty of contempt of court." Simmons v. Megerman , 742 S.W.2d 202, 204 (Mo. App. W.D. 1987). In criminal contempt, "[t]he adjudication is a conviction and the commitment [or fine] in consequence thereof is execution. Unless the record shows a judgment of conviction, the commitment [or fine] has no basis on which to rest." Id. Here, the only judgment is one of sanctions, finding Attorneys acted in bad faith and invoking the inherent authority of the court to deter attorney misconduct. There is no judgment of conviction or finding of guilt, as is contemplated from a proceeding in criminal contempt.
But, even if the sanctions judgment here could somehow be characterized as a judgment of criminal contempt (a proposition we reject), Attorneys' claim would still be without merit. "It has repeatedly been held that in actions for criminal contempt[,] ... technical pleadings are not required," and "strict compliance with the rule is not necessary." Curtis v. Tozer , 374 S.W.2d 557, 569 (Mo. App. 1964). And, as discussed in response to Attorneys' Point I above, they received both notice and a hearing, wherein they had the opportunity to defend their conduct but failed to persuade the trial court that their actions did not amount to bad faith.
Point III is denied.
E. The trial court did not err in granting Father's motion for sanctions.
In their fourth and final point, Attorneys argue that, in granting Father's motion for sanctions (which was based solely on Attorneys' contact with Dr. Schwartz), the court violated both the Missouri and United States Constitutions, Rule 55.03, and Missouri Judicial Canons 2A and 3B. The basis for their claim, as stated in the point relied on, is that the trial court "relied upon improper evidence"-specifically, conduct they engaged in during the proceedings on the underlying motion to modify.[12] Attorneys argue *354 that, because they did not know at the time they engaged in the conduct that it would be considered in a later judgment for sanctions, it could not be used against them as evidence of bad faith without the opportunity to have a hearing about the conduct. This point fails for multiple reasons.
First, in Francis v. Wieland , we expressly granted the trial court the authority to rely on "all of the proceedings to date and the filings, motions, actions by counsel in open court, and evidence adduced in this proceeding to date, and prior proceedings in reaching its decision regarding sanctions." Francis , 512 S.W.3d at 86. In other words, we have already determined that the trial court could properly rely on the very evidence Attorneys now claim was improperly before the court.
Second, the case upon which Attorneys purportedly relied when drafting their 44-page letter to Dr. Schwartz- Brown v. Hamid -expressly put them on notice that the manner in which they discussed potential corrections with Dr. Schwartz might very well cross the line into the crime of witness tampering or a violation of the Rules of Professional Conduct. Despite the Brown opinion's express warning that, "when ... an attorney emphasizes his or her connections with an expert's colleagues or superiors-especially when unrelated to the case-it may constitute a form of pressure on an expert's decision to testify," and, "[i]n some circumstances, such pressure may constitute a violation of an attorney's ethical duties or the criminal law," Brown , 856 S.W.2d at 54, Attorneys nonetheless repeatedly cited Dr. Gentry in their letter to Dr. Schwartz when strongly suggesting that Dr. Schwartz's methodology was flawed and claiming that Attorneys were simply providing her an opportunity to correct factual errors.
Finally, even if we had not granted the trial court express authority to consider the very evidence about which Attorneys now complain, and even if the Brown opinion had not put Attorneys on notice that their conduct might be problematic, on remand, Attorneys received a hearing at which they were presented with the very opportunity they claim to have been denied-a full hearing to explain how their conduct did not amount to bad faith. Though Attorneys complain that the hearing was limited, as we noted in subsection A above, Attorneys were permitted by the trial court-contrary to our mandate-to present any evidence they wished, and yet they still failed to convince the court that their conduct was rooted in anything other than bad faith.
Point IV is denied.
Conclusion
The trial court did not err in its judgment ordering monetary sanctions against Attorneys either under its inherent authority or pursuant to Father's motion. Its judgment is affirmed.
Alok Ahuja and Edward R. Ardini, Jr., Judges, concur.

"We view the evidence in the light most favorable to the trial court's ruling." Hale v. Cottrell, Inc. , 456 S.W.3d 481, 488 (Mo. App. W.D. 2014).

We specifically noted "that a sanctions hearing is not required in every case. Here, counsel's conduct was a matter the court could observe throughout the proceedings, and it had the inherent authority to impose sanctions without a hearing on the basis of any bad-faith conduct it observed." Francis v. Wieland , 512 S.W.3d 71, 86 n.17 (Mo. App. W.D. 2017) (emphasis added).

The letter to Dr. Schwartz is available in the legal file for case number WD79497 at pages 2336 through 2379.

The allegations of bias presented on appeal included multiple claims related to the court's discussion of Attorneys' conduct throughout the litigation. Francis , 512 S.W.3d at 82-83 (identifying claims as including (1) the court's concern over Attorneys' conduct underlying Father's motion for sanctions; (2) the court's comments and tone, indicating a "blatant distaste for [Attorneys]"; (3) the court's concern over the magnitude of Attorneys' fees; and (4) the court's apparent inconsistent treatment of Attorneys' contact with Father's expert and Father's counsel's allegedly similar conduct with Mother's expert).

In Francis v. Wieland , we noted that, in the letter to Dr. Schwartz, Attorneys "attempted to use the influence of Dr. Gentry-a colleague of Dr. Schwartz-to convince her to change her report and thus change her testimony about Mother." Francis , 512 S.W.3d at 85 n.16. In response to Attorneys' argument that their conduct was permissible under Brown , we stated: "We are not persuaded that Brown must be read as rendering counsel's conduct permissible. In fact, the court specifically stated that '[i]n some circumstances, such pressure may constitute a violation of an attorney's ethical duties or the criminal law.' " Id. (quoting Brown v. Hamid , 856 S.W.2d 51, 54 (Mo. banc 1993) ).

Throughout their brief, Attorneys indicate that "[t]his appeal ostensibly involves a review of the imposition of sanctions." (Emphasis added.) We see nothing "ostensible" about the matter. Attorneys have appealed the imposition of sanctions and nothing else.

These findings are taken from both the original sanctions judgment issued in 2016 and the second sanctions judgment issued in 2017, as the second judgment expressly indicated that it was re-entering and modifying the original judgment. Though not expressly defined as having been done in bad faith, the court's 2016 sanctions judgment also found that certain contact with Father's expert, Dr. Utley, amounted to a violation of Rule 4-3.4 of the Rules of Professional Conduct. But because that conduct was not expressly labeled as having been done in bad faith, we do not include it in our analysis.

Though Attorneys make this distinction, they do not explain why it matters, and we see no reason to believe that it does.

In making this argument, Attorneys ignore the fact that a court's inherent authority to issue sanctions for attorney misconduct has dual purposes, only one of which is compensating opposing parties for unnecessarily incurred expenses. A.J.H. ex rel. M.J.H. v. M.A.H.S. , 364 S.W.3d 680, 682 (Mo. App. E.D. 2012). The other purpose is "to vindicate judicial authority." Id. With respect to sanctions based on the Saturday deposition issue, the court was plainly relying on its ability to vindicate judicial authority and not any additional expenses incurred by the opposing parties, as the order expressly criticizes Attorneys for "intentional[ly] violati[ng] ... this Court's Order" and acting "in bad faith."

In the argument section of their brief, Attorneys also take issue with the manner in which the trial court arrived at the $100,000 figure. But, as this issue is not raised in their point relied on, we will not address it. "Claims of error raised in the argument portion of a brief that are not raised in the point relied on are not preserved for our review." C.S. v. Mo. Dep't of Soc. Servs. , 491 S.W.3d 636, 656 (Mo. App. W.D. 2016) (quoting Holliday Invs., Inc. v. Hawthorn Bank , 476 S.W.3d 291, 297 n.5 (Mo. App. W.D. 2015) ).

Some courts have questioned whether criminal contempt is even applicable outside the confines of criminal cases. See U.S. v. Aleo , 681 F.3d 290, 305 n.13 (6th Cir. 2012) (questioning whether inherent authority applies in a criminal matter and noting, "An argument can be made that Federal Rule of Criminal Procedure 42, covering criminal contempt, is the sole mechanism for punishing bad-faith conduct in criminal cases."); id. at 308 (Sutton, C.J., concurring) ("There are good reasons to think Congress and the Rules drafters meant to treat civil cases and criminal cases differently when it comes to regulating attorney misconduct."). "To ensure that criminal defendants receive zealous advocacy, courts 'generally tolerate arguments on behalf of criminal defendants that would likely be met with sanctions if advanced in a civil proceeding.' " Id. (quoting In re Becraft , 885 F.2d 547, 550 (9th Cir. 1989) ). We interpret Rule 36.01 in the same manner as its federal counterpart, Federal Rule of Criminal Procedure 42. Curtis v. Tozer , 374 S.W.2d 557, 569 (Mo. App. 1964).

In the argument section of their brief, Attorneys offer other reasons for which we should overturn the grant of Father's motion for sanctions, such as lack of due process, failure to comply with rule-based procedural protections, and improper pre-judgment of the issues. But, despite mere references to constitutional and rule-based authority, none of these additional reasons discussed in the argument section are contained within the point relied on. The point relied on identifies only the trial court's reliance on allegedly improper evidence as the basis for its purported error in granting Father's motion. Because these additional arguments do not appear in the point relied on, we will not address them. See C.S. , 491 S.W.3d at 656, supra n.10.