

# Missouri Court of Appeals

### Southern District

### Division Two

ESTATE of BILLIE W. COLLINS, )
by and through its personal representative )
SHANNON COLLINS, )
      )
         Appellant, )
      ) Nos. SD37185 & SD37286
vs. ) Consolidated
      )
FRANCES L. COLLINS, ) **Filed: June 14, 2022**
      )
         Respondent. )

APPEAL FROM THE CIRCUIT COURT OF HOWELL COUNTY

Honorable Judge Donna K. Anthony

### **AFFIRMED**

Shannon Collins ("Daughter"), as personal representative of the estate of her father,

Billie Collins ("the Estate"), appeals the trial court's judgment determining that her father

("Billie") and his former wife, Frances Collins ("Frances") had a partnership from 2013 until

Billie's death in 2016 for the operation of a cattle farm.[1]  In a single point, the Estate argues the

trial court misapplied the law in determining there was a partnership between Billie and Frances

because there was no specific and definite agreement between them to share profits and losses

of the cattle farm.  Finding no merit in the Estate's point, we affirm the trial court's judgment.

---

[1] Since Billie and Frances have the same last name, we refer to them by their first names.  No disrespect or familiarity is intended.

## Facts and Background

The sole issue in this case is whether the trial court misapplied the law in determining that Billie and Frances had a partnership to operate a cattle farm beginning in 2013. There is no dispute that Billie and Frances were not partners before 2013. Nevertheless, an understanding of the relationship between Billie and Frances before 2013 is necessary for context. The evidence, in the light most favorable to the judgment, is as follows.

### Billie and Frances's Relationship Before 2013 and the Dairy Operation

Billie and Frances married in 2005 and divorced in 2011. During their marriage, Frances and Billie ran a dairy farm in Pottersville. As part of the divorce settlement, Billie was awarded the Pottersville farm, certain equipment, cattle, and a bank account at Community First Bank ("Community"). After the divorce, Billie and Daughter formed Fresh Start Farms LLC ("the LLC") and were the only members of the LLC. Billie conveyed the Pottersville real estate to the LLC but did not convey the cattle and equipment.[2] The LLC did not have a bank account, so Billie primarily used his bank account at Community to operate the farm.[3]

Despite being divorced, Billie and Frances maintained a relationship. According to Frances, Billie was the "love of [her] life [.]" Sometime in late 2012 or early 2013, Frances moved back in with Billie at the Pottersville residence and was working on the farm. Billie paid Frances for her work in 2012. For the 2012 tax year, Billie provided Frances with a tax form showing himself as Payor and Frances the recipient of nonemployee compensation of $15,256. Billie treated Frances as an independent contractor performing work for the dairy farm.

At some point in 2012 or 2013, Billie decided "he always wanted a farm with crops . . . and beef cattle[,]" which he discussed with Frances. To make this transition from a dairy farm

---

[2] Frances makes no claim to the Pottersville real estate.

[3] The divorce settlement required the parties to keep their own checking accounts but Billie never removed Frances as a co-owner of the account at Community. The year following the divorce, Frances made no personal purchases from the account, "suggesting the understanding was that was [Billie's] account, not hers."

to a beef cattle operation, Billie and Frances began buying black bulls and crossbreeding them with the Holsteins that were part of the dairy herd. Some of the heifers that were part of the dairy herd were being retained while others were being sold off during the transition period.

### Transition to the Beef Cattle Business (2013-2016)

### (1) Participation in the Management/Business Decisions

By 2013, Frances was actively participating in the transition from dairy to beef and Billie stopped paying her for her work. Billie had health issues, so Frances performed much of the demanding physical labor and had knowledge of the working operations of the dairy farm. The farm also "had other people hired" to help out. Frances "had management authority with regard to purchases and employees."

### (2) Jointly Held Accounts, Property and Debts

As previously noted, Frances's name was kept on the Community account even though Billie had been awarded the account in the divorce. Both Billie and Frances wrote checks for bulls from this account. All the expenses related to the farm as well as household expenses shared by Billie and Frances were withdrawn from this account. Frances testified that in 2013, the revenue from the dairy operation was directly deposited into the Community account. Frances was not required to ask Billie for permission to write checks from the Community account.

In September 2014, Billie and Francis jointly borrowed $20,278.21 from Community to purchase farm equipment. In March 2015, they bought a farm with a residence in Vernon County for the transition from dairy to beef cattle. Both Billie and Frances were listed as owners on the deed for the Vernon County property. Frances contributed approximately $87,000 toward the purchase of the Vernon County property, which had a total purchase price of around $700,000.[4]

---

[4] In March 2017, Frances filed a partition action in Vernon County for the Vernon County farm property and the court ultimately ordered its sale. The Vernon County property is not at issue in this case as it was ordered partitioned in a separate lawsuit with Frances awarded half the proceeds from the sale of the

Various pieces of farm equipment were purchased jointly by Billie and Frances. In May 2015, $17,000 from the Community account was used to purchase a lowboy trailer. In June 2015, Billie and Frances borrowed $37,750 to purchase a Neville stock trailer. The invoice for the trailer had both Billie and Frances's name on it. In October 2015, Billie and Frances bought a corn planter.

In 2016, the last of the dairy herd from the Pottersville farm was sold, and all the remaining cattle were beef cattle bought or bred after 2013. That June, Billie and Frances borrowed $25,034 to purchase a Caterpillar D6M dozer.

### (3) Tax Filings

For each year between 2012 and 2015, Billie filed a Schedule F tax return as an individual. In 2013, Billie's tax return claimed farm income of $145,000. Frances testified she helped Billie file his tax returns from 2013 until his death in 2016. During this time, Frances did not claim any farm income on her own tax returns. In 2013, Frances reported $6,200 earned from working for temp agencies. In 2014 and 2015, the only personal property Frances claimed on her taxes was one personal vehicle. During this same period, Billie claimed all the profits and losses from the farm on his taxes.

In 2016, after Billie died, Frances filed a Schedule F tax return, claiming the farm income. Her tax return showed income of $287,465, but Frances did not know where all the income came from and could only say she claimed income earned from the sale of cattle, corn, and half the milk sales. According to Frances, there were more milk sales from the farm during 2016, but she only claimed half of them because the other half was Billie's. That year, Frances again only claimed one vehicle as her sole personal property.

_____

property. Billie and Frances went "back and forth" between the Pottersville farm and the Vernon County farm.

4

### (4) Revenue from Farm, Profit Sharing, Loss Sharing

In 2014, Daughter and Billie sold $544,000 worth of cattle. In 2015, Billie sold $504,000 worth of cattle. When asked about the proceeds of a cattle sale before Billie's death in 2016, Frances testified that the proceeds from that sale "probably went in our checking account." Frances testified that while her tax return showed no income from the farm, she was sharing in the "revenue" that was coming into the Community account. She testified she "was living on what [they] were accumulating in [their] checking account from milking the cows and from sales of cows." According to Frances, it did not matter that Billie was claiming the equipment and livestock and depreciations on his taxes because "the money was going back into our account. When I got back with [Billie], we just resided like we were married and we just went on. He was claiming stuff; I didn't have to claim it."

### Billie's Death and End of the Beef Operation

In August 2016, Billie's health deteriorated and Frances took him to the hospital where he was eventually placed on life support.[5] Billie told both Daughter and Frances to sell the cattle if he died. In September 2016, Billie died. After Billie's death, Frances went to the Pottersville farm and removed personal property the Estate subsequently alleged belonged to Billie. The last night Frances stayed in the Pottersville home was the day before Billie died. After his death, Frances sold 258 of the cattle. She testified she put that money in CD's at Community. Frances also removed several pieces of farm equipment from the Pottersville property.

After Billie's death, Daughter had her attorney draft eviction notices on behalf of the Estate, which were then posted on the Pottersville residence. Daughter discovered much of the equipment and other property was gone, including some cash Billie kept there. Frances

---

[5] About a week after Billie was admitted to the hospital, Daughter went to the house in Pottersville to photograph property and equipment because she anticipated having problems with Frances. Daughter located $38,000 in cash that Billie stored in a boot in the home and counted and photographed cattle at the farms in Vernon County and Pottersville, counting 151 and 123 respectively. On August 30, Daughter used her power of attorney from Billie to transfer the remaining parcels of the Pottersville farmland into the LLC.

admitted she took the cash but claimed she had a half interest in it. The missing equipment included the D6 dozer, a Ford F350 pickup truck, a Freightliner dump truck, an entire corral system, a Bobcat skid steer, Bobcat attachments, 50 calf huts, hand tools, a semi stock cattle trailer, an International Harvester 886 tractor, and a wallet with $2,000 in it. The F350, International Harvester tractor, and Bobcat were eventually retrieved, but according to Daughter, the tractor was returned in damaged condition. The cattle were all gone, too. Frances also harvested and sold the corn crop from the Vernon County property.[6]

### The Lawsuit

Daughter, on behalf of the Estate, sued Frances for replevin, conversion, and punitive damages. Frances denied the Estate's allegations and filed a counterclaim against the Estate, Daughter, and the LLC alleging she and Billie had a "joint venture" in which they had mutually agreed to invest their time and resources in the beef cattle operation.[7]

The case was tried to the court without a jury. The Estate did not dispute Frances's right to property that was jointly titled in her and Billie's names, such as the joint checking accounts, the Vernon County real estate, and certain pieces of equipment. The assets in dispute in this appeal are the farm assets that Frances admitted she took, but claims a half-interest in, by virtue of them being partnership property.[8] In determining this issue, the trial court weighed the facts favoring a partnership against the facts militating against a partnership.

The trial court held facts favoring a partnership included:

- Frances contributed her labor and expertise during the transition to beef cattle;

- Frances wrote large checks from the Community account beginning in 2013 and this was not oversight or something that required approval from Billie;

- Frances made farm purchases and management decisions beginning in 2013;

---

[6] The Estate acknowledged that because the corn was on land jointly owned by Billie and Frances, the Estate only had a half-interest in the proceeds.

[7] In Missouri, "there is no essential difference between a partnership and a joint venture." **Grissum v. Reesman**, 505 S.W.2d 81, 86 (Mo. 1974).

[8] The property included farm equipment, the cattle sold for $204,837.97, sales from crops, and the four items she listed for auction—the Caterpillar D6M dozer, the lowboy trailer, a Caterpillar TH 83 telehandler and bucket, and the semi stock trailer.

6

- Frances incurred risk for the enterprise by signing on loans;

- Billie and Frances were both listed on titles for joint purchases beginning in 2013;

- Daughter recognized a partnership and refused to join it because she did not want to be in a partnership with Frances, and

- Frances contributed assets to the Community account "in the form of rents, money, [and] payment for additional land clearing[.]"  These contributions were "far less than Billie's," though "because of his inability due to health concerns to manage the day-to-day physical work and management of a farm, the proportionate size of the monetary contributions is irrelevant."

The trial court found a partnership had been proven "with respect to the farm purchases and assets acquired from 2013 going forward[,]"  and ordered the sale and partition of these items and the profits from the sale divided equally between the parties.

The Estate timely filed a motion for a new trial, which was deemed denied.[9]  The Estate now appeals from that judgment.

## Discussion

In a single point, the Estate argues:

The trial court erred in holding there was an "implied partnership" between Billie and Frances from 2013 until Billie's death in 2016 encompassing all property Billie's farming operation acquired during that time regardless of title *because* this misapplied the law of Missouri that under § 358.070, R.S.Mo., a partnership must involve not merely joint ownership of an enterprise including tenancy in common, but rather a definite and specific agreement to share net profits and losses between the partners *in that* viewing the evidence most favorably to the trial court's decision and taking as true the facts it found, there was no agreement

---

[9] The trial court entered a final judgment on March 15, 2021.  Each party filed timely authorized post-judgment motions, with the last one filed on April 13.  Frances sought to amend the judgment to allow the $38,000 cash from the boot to come from her auction sale proceeds, to change the terms of returning property to the Estate, and to correct a VIN number for a piece of equipment.  The Estate's post-trial motion argued the evidence did not establish any form of partnership between Billie and Frances and the trial court misapplied the law in finding the existence of a partnership.  Under Rule 81.05(a)(2)(A), if the trial court took no action on these motions, they would be deemed denied and the judgment would be final for appeal 90 days after the last-filed timely authorized post-trial motion (i.e., July 12, 2021).  On July 11, 2021, the trial court entered an amended judgment correcting a VIN number and allowing the selection of a different auctioneer if the parties agreed to a different auctioneer.  The amended judgment was entered within 90 days after the last timely authorized post-trial motion was filed, so it is the operative judgment.  The amended judgment implicitly retained the March 15 judgment in all other respects.  All rule references are to Missouri Court Rules (2019) unless otherwise indicated.

between Billie and Frances to share in the net profits and losses of the farming operation, Frances did not receive any share of the operation's profits or losses, the operation never filed a partnership tax return, only Billie reported any income or loss from the farming operation on his tax returns and Frances did not, and only Billie reported the personal property of the operation on his personal property tax assessments and Frances did not.

In a bench-tried case, the judgment will be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010). " [T]he trial court's judgment is presumed valid, and the burden is on the [Estate] to demonstrate its incorrectness." *McElvain v. Stokes*, 623 S.W.3d 769, 774 (Mo. App. W.D. 2021) (internal citation and quotation omitted).

The Estate contends the trial court "misapplied the law" by concluding Billie and Frances had a partnership for the operation of the farm because "there was no agreement between Billie and Frances to share in the net profits and losses of the farming operation[.]" This argument, however, is premised upon and constructed around factual inferences drawn by the Estate that Frances and Billie had no agreement to share in the profits and losses of the farming operation.[10] Such inferences were implicitly rejected by the trial court, *see* Rule 73.01(c), and contrary to the trial court's judgment. Under our standard of review, we are required to disregard inferences contrary to the judgment and defer to the trial court's assessment of the

---

[10] Whether or not Billie and Frances agreed to share in the profits and losses of the farming operation was a finding of fact for the trial court to determine. The trial court's judgment was silent as to whether Billie and Frances so agreed. Neither party requested specific findings of fact per Rule 73.01. When the trial court has made no specific findings on a factual issue, we consider such findings as having been made in accordance with the trial court's judgment. *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014); Rule 73.01(c). Accordingly, we treat the issue of whether Billie and Frances agreed to share in the profits and losses of the farming operation in accordance with the trial court's judgment.

8

evidence. ***Estate of Elder v. Estate of Pageler***, 564 S.W.3d 742, 748 (Mo. App. S.D. 2018). Because the Estate's point and argument claiming the trial court misapplied the law is premised upon and constructed around purported facts and inferences that we are required to disregard upon appellate review, it necessarily lacks any meritorious analytical foundation, support or persuasiveness for our determination that such a claimed legal error occurred. ***Id.*** at 748-49.

Moreover, by relying upon the purported facts and inferences contrary to the judgment in its argument, the Estate pivots from the misapplied-the-law challenge raised in its point to a not-supported-by-substantial-evidence challenge.[11] *See **Missouri Ozarks Radio Ntwk. Inc. v. Baugh***, 598 S.W.3d 154, 170 (Mo. App. S.D. 2020). To sustain such a challenge requires an appellant to follow certain analytical steps. ***Houston***, 317 S.W.3d at 187. "[A]dherence to this analytical framework is *mandatory . . .* because it reflects the underlying criteria necessary for a successful challenge–the absence of any such criteria, even without a court-formulated sequence, dooms an appellant's challenge." ***Robinson v. Loxcreen Co., Inc.***, 571 S.W.3d 247, 251 (Mo. App. S.D. 2019) (quoting ***Nichols v. Belleview R-III School Dist.***, 528 S.W.3d 918, 928 (Mo. App. S.D. 2017)). It requires the party challenging the judgment to: (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment; (2) identify all of the favorable evidence in the record supporting the existence of that proposition; and, (3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the

---

[11] Rule 84.04(e) requires that an appellant's argument be *limited* to those errors included in the points relied on. "Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review." ***Hale v. Burlington N. & Santa Fe Ry. Co.***, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) (quoting ***Davis v. Wieland***, 557 S.W.3d 340, 352 n.10 (Mo. App. W.D. 2018)). "In addition, an argument not set out in the point relied on but merely referred to in the argument portion of the brief does not comply with the requirements of Rule 84.04(d) and the point is considered abandoned in this Court." ***Brizendine v. Conrad***, 71 S.W.3d 587, 593 (Mo. banc 2002). By raising a misapplied-the-law challenge in its point but crafting an argument that depends on purported facts and inferences contrary to the judgment (i.e., a not-supported-by-substantial-evidence challenge), the Estate has failed to preserve its not-supported-by-substantial-evidence challenge for our review.

proposition.  ***Houston***, 317 S.W.3d at 187.  The Estate ignores all three steps.  Stating only the evidence favorable to its own position without demonstrating why the trier of fact could not reasonably have decided otherwise is fatal.  This Court may not substitute its judgment on the evidence when the evidence before the trial court could have resulted in two opposite findings and we are bound by the trial court's credibility findings.  The Estate's failure to follow ***Houston's*** analytical framework deprives its argument of any analytical or persuasive value.  *See* ***Missouri Ozarks Radio Ntwk. Inc.***, 598 S.W.3d at 170.  The Estate's point is denied.

## Conclusion

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

GARY W. LYNCH, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS